IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JESSE DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 2:16cv346-WHA |
| ) | (WO) |
| CITY OF MONTGOMERY, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

This cause is before the court on Defendants' Motion to Dismiss the City of Montgomery from Counts I, II, III, and IV and Individual Defendants, Officers G. J. Marshall, Lizenby, and Fictitious Defendant, Officer A, from Counts I and IV of the Plaintiff's First Amended Complaint (Doc. # 20). Defendants initially filed a Motion to Dismiss ("(First) Motion to Dismiss") (Doc. # 12) on June 6, 2016, addressed to the original Complaint. The court in granting in part and denying in part the Defendants'(First) Motion to Dismiss, also granted Plaintiff, Jesse Davis ("Davis"), leave to amend three claims that were dismissed without prejudice.

In response, Davis filed an Amended Complaint on July 22, 2016, asserting all of his un-dismissed claims, claims dismissed without prejudice, and one additional claim against the City of Montgomery ("City") for failure to train and supervise its police officers (Doc. # 19). Defendants then moved for dismissal (referred to herein as Defendants' "(Second) Motion to Dismiss") under Federal Rule of Civil Procedure 12(b)(6) on the three claims initially dismissed

without prejudice and the one additional claim. For reasons to be discussed, Defendants' (Second) Motion to Dismiss is due to be GRANTED in part and DENIED in part.

## II.  MOTION TO DISMISS

The court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of the cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555.

## III.  FACTS

The allegations of the Plaintiff's Amended Complaint are as follows:

The Plaintiff, Jesse Davis, was a seventy-six (76) year old man, who, in addition to having extreme hearing loss, also suffers from diabetes. Davis alleges that on June 22, 2014, he was driving home from a store at around midnight when he was pulled over by a Montgomery police officer for changing lanes without signaling. Defendant, G. J. Marshall ("Marshall"), a

2

Montgomery City police officer, conducted the traffic stop. Marshall's dashboard camera was running and recorded the events alleged in the Amended Complaint.

After pulling Davis over, Marshall apparently thought Davis had been drinking and administered a field sobriety test. Davis was able to walk a straight line. Nevertheless, Marshall continued looking for other evidence to corroborate his suspicions that Davis had been drinking. Dash camera footage shows Marshall entering Davis's vehicle several times during the traffic stop. However, Marshall never mentioned having seen or smelled any alcohol in Davis's car.

During the stop, Davis was not completely compliant with Marshall's instructions, however, because Davis had difficulty hearing Marshall. Davis told Marshall that he was having a hard time hearing Marshall, and Marshall was apparently aware of Davis's inability to hear because Marshall began yelling questions and instructions to Davis.

Davis also told Marshall that he suffered from diabetes and needed to go home to take his diabetes medications. Instead of allowing Davis to go home at the end of a long day, Marshall called his supervisors for instructions. Marshall can be heard telling his supervisors, "I don't have anything on him" (Doc. # 19, p. 4, ¶ 17). Still, Marshall continued looking.

Eventually, Marshall called paramedics to the scene to treat Davis who had been complaining about needing his diabetes medication. Paramedics arrived, along with the other individuals Defendants, Officer Lizenby and Fictitious Defendant, Officer A, and began treating Davis at the scene. The paramedics also had a hard time communicating with Davis because of his hearing problems.

Soon thereafter, a cameraman from a Montgomery Police Department ("MPD") television show arrived. At that point, the entire tenor of the traffic stop changed. One of those present, who is believed to be a paramedic, walked to the driver's side door of Davis's vehicle

and exclaimed, "There it is," gesturing towards a bottle of rubbing alcohol.[1] (Doc. # 19, p. 4, ¶ 22).[2]

Marshall then arrested Davis for driving under the influence. Marshall got behind Davis and attempted to fasten handcuffs around Davis's wrists. However, because of Davis's large wrists, Marshall experienced difficulty tightening the handcuffs. Marshall then compensated by squeezing the handcuffs so tight that they cut through Davis's skin, reopening a surgical scar on Davis's wrists, causing him severe pain. Davis told Marshall that he was hurting him and repeatedly asked Marshall, "What do you want me to do?" (Doc. # 19, p. 5, ¶ 28). Davis turned his ear towards Marshall, as he had done throughout the stop, to listen to Marshall's instructions.

At that point, and apparently for no reason at all, Marshall body-slammed Davis to the pavement, cracking multiple of Davis's ribs. Marshall landed on top of the seventy-six (76) year old Davis and shoved his knee into Davis's back. Officer Lizenby and Officer A piled on top of Davis, holding his head to the ground.

Davis was moved to a police vehicle, where he repeatedly complained about pain in his shoulder and ribs and asked to be taken to the hospital. Officer Marshall refused his requests and, between rehearsing lines for an interview with the MPD television show and otherwise ignoring Davis, responded, "It's too late." (Doc. # 19, p. 6, ¶ 31). Davis also complained that he needed medicine for his diabetes, to which Marshall responded sarcastically, asking Davis if he needed medicine for ingesting rubbing alcohol.

---

[1] Even though Marshall had entered Davis's vehicle several times during the over one hour long traffic stop and never mentioned having seen a bottle of rubbing alcohol or smelled any alcohol whatsoever in the car, the Defendants state that the bottle was in "plain view." (Doc. # 20, p. 3).
[2] Davis alleges that he had not ingested rubbing alcohol. Rather, Davis kept a bottle of rubbing alcohol, as advised by his doctor, to use topically to ease chronic pain in his wrists, following surgery for carpel tunnel syndrome.

Marshall then took Davis to jail. On his way to the jail, Davis reiterated that he was in pain, but again, Marshall ignored his complaints, telling Davis to "Shut up." (Doc. # 19, p. 6, ¶ 35).

When Davis was processed into the jail, he told people there that he was in pain in his shoulder and ribs; however, no one at the jail helped him.

Upon intake, he was administered a Draeger (breathalyzer) test in which he scored a 0.0 mg/dl, meaning there was no alcohol in his system. Nevertheless, Davis would spend the remainder of the night in the "drunk tank."

Although the jail personnel provided Davis some type of medication for his diabetic condition, it was not the same medication he normally takes. Moreover, he did not receive any medical treatment for his cracked ribs during the four days that he was in jail.

Davis was charged with Driving Under the Influence ("DUI") and making an improper lane change. He was found not guilty of the DUI and guilty of the improper lane change. When he was released from jail, he went to the doctor for treatment of his ribs. He was in the hospital for eighteen (18) days.

Davis's Amended Complaint alleges that the City is aware that its police officers often come into contact with citizens like Davis who suffer from disabling conditions, such as deafness, hard of hearing, and speech impediments (Doc. # 19, p. 7, ¶ 44). Moreover, that the City has a policy, pattern, or practice of arresting individuals who suffer from these conditions, and using excessive force upon non-resisting individuals who are otherwise compliant and non-resisting (Doc. # 19, p. 7, ¶¶ 45–46). Finally, Davis alleges that the City has a policy, pattern, or practice of failing to train its police officers on how to properly recognize and deal with individuals who suffer from these disabling conditions (Doc. # 19, p. 8, ¶ 47).

## IV.  DISCUSSION

There are two issues before the court: (1) whether Davis set forth sufficient facts to support a plausible inference that the City's failure to train its police officers in recognizing and dealing with individuals with hearing and speech disabilities amounts to an official policy that is actionable under 42 U.S.C. § 1983; and (2) whether Davis plausibly alleged that Defendants were deliberately indifferent to Davis's serious medical needs because they allegedly did not provide any treatment for Davis's broken ribs during the four (4) days he was in the Municipal Jail.

### A.  *Claims Against the City*

When the court earlier dismissed all federal claims against the City, it gave the Plaintiff an opportunity to amend to allege facts that would support those claims. Plaintiff's Amended Complaint attempts to do that in amended Counts II, III, and IV and in the added Count I.

42 U.S.C. § 1983 (2012) states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Municipalities are considered "persons" and, thus, may be sued directly under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To hold a municipality liable, however, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

6

Davis alleges (1) that his Fourth and Fourteenth Amendment rights were violated because the individual defendants used excessive force in arresting him; (2) that "[t]he City of Montgomery was deliberately indifferent to Mr. Davis's Fourth and Fourteenth Amendment rights, through its failure to properly train its police officers to recognize citizens with hearing and speech disabilities, such as Davis" (Doc. # 23, p. 6); and (3) that "[t]he individual defendants' baffling failure to recognize Mr. Davis' hearing disability and speech impediment (related to his hearing disability) directly led to his unlawful arrest and the excessive force used against him" (Doc. # 23, p. 5).

Defendant City, however, moves for dismissal of the § 1983 claims against it in Count I (Failure to Train and Supervise), Count II (Wrongful Arrest, False Imprisonment), Count III (Excessive Force), and Count IV (Deliberate Indifference to Serious Medical Needs) under the second prong of the *McDowell* analysis, arguing that Davis's Amended Complaint fails to sufficiently establish a custom or policy constituting deliberate indifference to Davis's constitutional rights (Doc. # 20, p. 4).

### *1. Official Policy*

A municipality may only be liable for the tortious acts of its employees if action taken "pursuant to official municipal policy" results in a deprivation of a federally protected right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis original); *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*.")

While "'official policy' often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances over time," *Pembaur*, 475 U.S. at 480–81, it also includes actions of a policymaker that are representative of official government policy, *see Monell*, 436 U.S. at 694, as well as situations where a policymaker's "failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

This third line of so-called failure-to-train liability is especially rare. *See City of Canton*, 489 U.S. at 387 (noting "that there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983"). That is because the failure to train must be the "moving force" behind the constitutional violation in order to establish municipal liability under § 1983. *Monell*, 436 U.S. at 694; *see also Pembaur*, 475 U.S. 483 ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.") "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *City of Canton*, 489 U.S. at 389.

To determine whether a failure to train amounts to a deliberate or conscious choice by a municipality, courts are instructed to look at the "degree of fault" of a municipality's failure to train. *City of Canton*, 489 U.S. at 388. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.*

With respect to police officer training, the deliberate indifference standard is appropriately a high threshold. *See City of Canton*, 489 U.S. at 391 (finding that adopting a lesser standard of fault and causation would "engage the federal courts in an endless exercise of second-guessing municipal employee training programs[,] . . . an exercise we believe the federal courts are ill suited to undertake . . . ."); *see also Connick v. Thompson*, 563 U.S. 51, 70 (2011) (quoting *Brown*, 520 U.S. at 406) (noting that "we must adhere to a 'stringent standard of fault,' lest municipal liability under § 1983 collapse into *respondeat superior*"). Nevertheless, "it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is *so obvious*, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390 (emphasis added).

Ordinarily, to make out a prima facie showing of deliberate indifference with respect to police training, a plaintiff must allege a pattern of similar constitutional violations that would put the municipality on notice of its inadequate training. *See Connick*, 563 U.S. at 62 ("Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability.") (internal quotations and citations omitted); *see also Wright v. Sheppard*, 919 F.2d 665 (11th Cir. 1990) (finding "no evidence of a history of widespread prior abuse by [Sheriff's] Department personnel that would have put the sheriff on notice of the need for improved training or supervision"); *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994) (quoting *Brooks v. Scheib*, 813 F.2d 1191 (11th Cir. 1987)) ("A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a 'custom or policy' if the

municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct.")

In the alternative, the Supreme Court in *City of Canton* left open the possibility that "in a narrow range of circumstances" a plaintiff may proceed on a failure to train claim based upon a single incident of misconduct.[3] *Brown*, 520 U.S. at 409. The *City of Canton* Court posed the hypothetical of a municipality that failed to train its police officers on the use of deadly force. *See City of Canton*, 489 U.S. at 390, n.10. It reasoned that given the fact that policymakers know that police officers are required to shoulder deadly weapons and may be required to use them to protect the public from fleeing felons, the need to train police officers on the constitutional limitations of the use of deadly force would be so obvious that a failure to do so would amount to deliberate indifference. *Id.*

Eight years later, the Supreme Court in *Brown* clarified that a plaintiff could succeed on a theory of so-called "single-incident" liability if he alleged "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Brown*, 520 U.S. at 409. The *Brown* Court reasoned further:

> In leaving open in *Canton* the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a

---

[3] Four years before *City of Canton*, in *Oklahoma City v. Tuttle*, the Supreme Court declared, "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker." 471 U.S. 808, 823–24 (1985). However, "*Tuttle* [dealt] with the requirements for proving the existence of a custom." *Latuszkin v. Chicago*, 250 F.3d 502, 505 (7th Cir. 2001). Certainly, "[a] single incident would not be so pervasive as to be a custom." *Grech v. Clayton Cnty., Ga*, 335 F.3d 1326, 1329 (11th Cir. 2003). But where a constitutional violation is a "plainly obvious consequence" of a failure to train and the situation in which the violation occurs is likely to recur, a municipality may be said to have been deliberately indifferent to the need. *Brown*, 520 U.S. at 411; *City of Canton*, 489 U.S. at 390, n.10.

> pattern of constitutional violations, we simply hypothesized that, in a narrow range of circumstances a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations. The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right. The high degree of predictability may also support an inference of causation—that the municipality's indifference led directly to the very consequence that was so predictable.

*Brown*, 520 U.S. at 409. Accordingly, single-incident liability is predicated on (1) the likelihood that a police officer will be confronted with a specific situation and (2) the predictability that an officer, when confronted with that situation, will violate a person's constitutional rights. *See id.*; *see also Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (11th Cir. 1997) (quoting *Walker v. City of New York*, 974 F.2d 293, 299–300 (2d Cir. 1992), *cert. denied*, 507 U.S. 972 (1993)) ("It is not enough to show that a situation will arise and that taking the wrong course in that situation will result in injuries to citizens . . . *City of Canton* also requires a likelihood that the failure to train or supervise will result in the officer making the wrong decision.")

In this case, Davis's allegations are mere conclusory statements of the elements of the cause of action for failure to train. Davis alleges that the City is "aware that Police Officers often come into contact with citizens who are deaf, who are hard of hearing and/or who have speech impediments," (Doc. # 19, p. 7, ¶ 44), and that "[t]he City has a policy, and/or pattern and practice, of having its police officers use excessive force upon non-resisting individuals when effecting an arrest against an individual who is deaf, hard of hearing, or has a speech impediment and is otherwise compliant and non-resisting." (Doc. # 19, p. 7, ¶ 46). Davis further alleges that "it was highly predictable that failure to train Police Officers to deal with such disabled citizens

would result in violations of their federal rights." (Doc. # 19, p. 8, ¶ 49). These allegations are not "detailed factual allegations," but rather are mere conclusions. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.")

Davis has not alleged any facts showing a history of constitutional violations against persons with hearing and speech disabilities such that the need for training would have been so obvious to the City that a failure to train amounted to deliberate indifference towards the constitutional rights of such persons. Although Davis has alleged that Montgomery police officers often encounter individuals with similar hearing and speech disabilities as Davis, Davis has not alleged how often, if at all, those encounters resulted in constitutional violations. Moreover, Davis has not alleged facts to support an allegation that it is a highly predictable consequence of the City's failure to train that police officers would violate the constitutional rights of these individuals. Accordingly, Davis has not pled sufficient facts to support a plausible inference that the City's failure to train amounted to deliberate indifference.

Though Davis would like this court to infer deliberate indifference on the part of the City from the "unexplainable ease to which Defendant Marshall and the other defendants assumed, or confused, Mr. Davis' hearing disability and related speech impediment with alcohol (or other substance) abuse," (Doc. # 23, p. 6) (emphasis removed), the facts alleged in Davis's Amended Complaint more likely suggest that Officer Marshall acted independently and allegedly committed a constitutional tort. *See Brown*, 520 U.S. at 403 (recognizing "that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor").

Accordingly, Davis's claim against the City for failure to train its police officers (Count I) is due to be dismissed. For the same reasons discussed above, the claims against the City in Counts II, III, and IV are also due to be dismissed.

### B. *Deliberate Indifference to Serious Medical Needs*

Defendants also move to dismiss the individual Defendants from Count IV—Violation of Fourteenth Amendment and 42 U.S.C. § 1983 Deliberate Indifference to Serious Medical Needs—"because any injury suffered by Davis was not obvious and no defendant was deliberately indifferent to Davis's medical needs." (Doc. # 20, p. 9).

To state a claim for deliberate indifference to serious medical needs, a plaintiff must allege sufficient facts to "satisfy both an objective and a subjective inquiry. First, the plaintiff must prove an objectively serious medical need. Second, the plaintiff must prove that the [public] official acted with deliberate indifference to that need." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (internal quotation marks omitted) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

#### 1. Serious Medical Need

Defendants first argue that Davis's broken ribs and diabetes were not a serious medical condition. "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " *Id.* at 1307 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Alternatively, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Farrow*, 320 F.3d at 1243.

Defendants contend that "the amended complaint does not allege a doctor diagnosed him with a broken rib, or that the injury was 'so obvious' to a lay person that he needed treatment." (Doc. # 20, p. 10).[4] While Davis does not allege that his broken ribs were diagnosed until *after* his four-day stay at the Municipal Jail, (Doc. # 19, p. 7, ¶ 42), Davis's injuries as alleged were obvious to Officers Marshall, Lizenby and Fictitious Officer A. (Doc. # 19, p. 15, ¶ 76). It does not take a degree from a medical school to realize the peril facing a seventy-six (76) year old after he has just been violently body-slammed to the ground. (Doc. # 19, p. 5, ¶ 29). This peril, coupled with his alleged repeated complaints of pain in his shoulder and ribs and requests to go to the hospital (Doc. # 19, pp. 5–6, ¶¶ 31, 33, 35, 37, 77–79), would have made his injuries obvious to a lay person that he needed treatment.[5]

### 2. Deliberate Indifference

Defendants also argue that, even if Davis had a serious medical need, they were not deliberately indifferent to it. In order to prove that a police officer acted with deliberate indifference, Plaintiffs must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004); *see also Farmer v. Brennan*, 511 U.S. 825, 839 (1994)

---

[4] Defendants also cite *Jackson v. Capraun* for the contention that "pain alone may does [sic] not rise to the level of a 'serious medical need'" (Doc. # 20, p. 11). *See* 534 Fed. Appx. 854, 857 (11th Cir. 2013). However, the *Jackson* court never made such a finding. Indeed, to the contrary, the *Jackson* court assumed, merely for the sake of argument, that "back pain *did* constitute a 'serious medical need." *Id.* (emphasis added). Accordingly, to the extent Defendants rely on *Jackson* to support its argument that pain alone is insufficient to support a deliberate indifference to serious medical needs claim, the court finds this argument unsupported from the case law.
[5] Although Defendants correctly argue that they were not deliberately indifferent to Davis's diabetes because they did, in fact, treat it, (Doc. # 19, p. 7, ¶ 40, 80), the court disagrees with the Defendants' appraisal of diabetes as a non-serious medical condition. (Doc. # 20, p. 10). It is common sense that a failure to treat diabetes may be severely detrimental to a person's health, making it a serious medical condition under the alternative standard. *Farrow*, 320 F.3d at 1243.

(noting that deliberate indifference requires a finding that a person consciously disregarded a substantial risk of serious harm[6]) (internal citations and quotations omitted). [7]

In this case, Davis has alleged facts supporting a deliberate indifference to medical needs claim with respect to his broken ribs. Davis alleges that Marshall threw him to the ground. (Doc. # 19, p. 5, ¶ 29). Moreover, as stated above, the officers must have been aware of the serious risk of harm that a delay in treatment could pose the seventy-six (76) year-old Davis after being body-slammed on the ground. Davis repeatedly complained that he was experiencing pain in his shoulder and ribs and that he needed to go to the hospital. (Doc. # 19, p. 5–6, ¶¶ 31, 33, 35, 37, 77–79). However, nobody rendered Davis aid. Instead, Officer Marshall told Davis to "Shut up" and sarcastically asked if he needed medicine for ingesting rubbing alcohol. (Doc. # 19, p. 6, ¶¶ 33, 35, 77, 78). In addition, the jail staff completely ignored Davis's complaints and "treated him as though he were drunk." (Doc. # 19, p. 6, ¶ 37, 79).

These facts, taken as true, support a plausible inference of deliberate indifference to Davis's serious medical needs. *See Brown v. Hughes*, 894 F.2d 1533 (1990) (denying prison guard's motion for summary judgment as to inmate's deliberate indifference to serious medical needs claim because there was a genuine issue of material fact as to whether the guard knew about the inmate's condition when there was evidence that the guard was called to the inmate's

---

[6] The *Farmer* Court also rejected any allusion comparing deliberate indifference in § 1983 context, *see infra*, with deliberate indifference in Eighth Amendment context, finding the latter to contain a state of mind requirement not found in the former.

[7] Ordinarily, plaintiffs must establish for each defendant that his medical needs were "so obvious that a lay person—in that Defendant's place—would recognize the need for treatment." *Burnette v. Taylor*, 533 F.3d 1325; *see also Valderrama v. Rousseau*, 780 F.3d 1108, 1116–1121 (11th Cir. 2015) (considering each officer's subjective appreciation and disregard for plaintiff's medical needs separately). However, in this case, Davis alleges that all Defendants were at the scene and active participants in his arrest. Therefore, at this stage of the proceedings, the court will consider their actions together. *See Mann*, 588 F.3d at 1306–08 (considering multiple officers' actions together).

cell to break up a fight, the inmate had a limp and complained about his foot, and the guard told the inmate that he would send someone to look at it but never did); *Cf. Hughes v. Noble*, 295 F.2d 495 (5th Cir. 1961) (finding a complaint that alleged officers arrested a man after he lost control of his automobile, ran off the highway, and broke his neck and refused to provide him medical treatment but instead locked him in a cell for eleven (11) hours before releasing him sufficient to survive a motion to dismiss under the *Conley v. Gibson* pleading standard).

Defendants argue that "at best" their "failure to diagnose [Davis's] broken ribs" only amounts to mere negligence." (Doc. # 20, p. 10). However, it is not the failure to diagnose, but rather the failure to provide any medical assistance whatsoever that gives rise to Davis's claim. The Eleventh Circuit has repeatedly held "[c]onduct that is more than mere negligence includes . . . knowledge of a serious medical need and a failure or refusal to provide care." *Magwood v. Sec'y, Fla. Dep't of Corr.*, No. 15-10854, 2016 WL 3268699, at *3 (11th Cir. June 15, 2016) (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)); *see also Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010) (stating "[d]eliberate indifference may result . . . from failure to provide medical care at all"); *Tucker v. Randal*, 948 F.2d 388, 391 (7th Cir. 1991) (finding the deliberate nontreatment of broken bones to constitute a deliberate indifference to serious medical needs). Davis claims that Defendants refused to treat his broken ribs from the time of his arrest until his release four (4) days later. (Doc. # 23, p. 11). Because none of the officers sought any medical treatment whatsoever for Davis's broken ribs, under the facts as alleged, Davis has pled a plausible claim for relief for deliberate indifference to his serious medical needs.

Accordingly, Defendants' Motion to Dismiss Davis's deliberate indifference to serious medical needs claim is due to be denied to the extent Davis's claim relates to his broken ribs.

## V.  CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part, as follows:

1. Defendant City of Montgomery's Motion to Dismiss the City from Count's I, II, III, and IV is GRANTED, and those claims against the City are DISMISSED.

2. The Individual Defendants' Motion to Dismiss Count IV is DENIED with respect to injuries sustained to Davis's ribs and is GRANTED as to a claim based on a failure to treat Davis's diabetes.

3. Individual Defendants' Motion to Dismiss Count I is DENIED as moot, since that claim is asserted only against the City.

Done this 10th day of November, 2016.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE